UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICOLA PIRAS,

    Plaintiff,

v.                                               Case No. 8:24-cv-2855-KKM-LSG

DIRECTOR, TEXAS SERVICE
CENTER, U.S. CITIZENSHIP
AND IMMIGRATION
SERVICES, and DIRECTOR,
NATIONAL BENEFITS
CENTER, U.S. CITIZENSHIP
AND IMMIGRATION
SERVICES,

    Defendants.
_____

## ORDER

Nicola Piras moves for a preliminary injunction reopening his I-485 petition, postponing the date of U.S. Citizenship and Immigration Services' (USCIS) denial of that petition, and reinstating the validity of his Employment Authorization Document, his travel authorization, and his period of authorized stay in the country. Mot. for Prelim. Inj. (MPI) (Doc. 28). For the below reasons, I deny that motion.

I. BACKGROUND

Piras, a citizen of Italy, entered the United States in August 2022 on a nonimmigrant visa. Am. Compl. (Doc. 24) ¶¶ 9, 12. In 2023, Piras's father sought to adjust to lawful permanent resident status through employer sponsorship. "This generally entails a three-step process: (1) the employer files an application for a labor certification with the Department of Labor; (2) if the application is approved, the employer files a Form I-140 visa petition with USCIS on the noncitizen's behalf; and (3) if the Form I-140 petition is approved, the noncitizen files a Form I-485 application for adjustment of status." *Kanapuram v. Dir., US Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1304–05 (11th Cir. 2025).

In March 2023, the Department of Labor approved a "labor certification" form filed on behalf of Piras's father. Am. Compl. ¶ 16. The next day, Gialda, LLC, Piras's father's employer, mailed via FedEx First Overnight delivery an I-140 petition and a I-907 request for premium processing to USCIS's Texas Service Center. *Id.* ¶¶ 17–18; *see* 8 U.S.C. § 1356(u)(1) ("The Secretary of Homeland Security is authorized to establish and collect a premium fee for [certain] immigration benefit types."). Gialda, LLC, submitted credit card information "to process the combined USCIS filing fees in the amount of $3,200.00, for the I-140

petition and I-907 premium processing request." Am. Compl. ¶ 19. Piras, then age twenty, was included in the petition as a derivative beneficiary. *Id.* ¶ 20; *see* 8 U.S.C. § 1101(b)(1) (defining "child," in part, to mean "an unmarried person under twenty-one years of age"); *id.* § 1153(d) (a "child" is "entitled to the same status" if "accompanying" his "parent"). Delivery of the petition was scheduled for Saturday, March 4, 2023, but USCIS did not accept delivery on that day. Am. Compl. ¶¶ 17, 23–24. On Sunday March 5, Piras turned twenty-one years old. *Id.* ¶ 25. The next day, March 6, FedEx successfully delivered the petition to USCIS. *Id.* ¶ 26.

USCIS denied the I-140 petition because its regulation required separate payments for the premium processing service fee and the I-140 petition. *Id.* ¶¶ 29–31; *see* 8 C.F.R. § 106.4(b) (2023) ("The fee to request premium processing service may not be waived and must be paid in addition to, and in a separate remittance from, other filing fees.").[1] Gialda, LLC, resubmitted the petition with separate payments and, on March 21, 2023, USCIS approved it. Am. Compl. ¶¶ 33–36.

Based on the approved petition, Piras and his father, in May 2023, filed their I-485 petitions, seeking lawful permanent resident status. *Id.* ¶¶ 36–38. USCIS

---

[1] Subsequent citations to 8 C.F.R. § 106.4(b) refer to this version unless otherwise noted.

approved Piras's father's petition but denied Piras's petition on October 2, 2024, because he longer qualified as a "child" under the Immigration and Nationality Act (INA). *Id.* ¶¶ 39–40; *see* (Doc. 24-5). USCIS applied the Child Status Protection Act (CSPA) to arrive at this conclusion. *See* (Doc. 24-5) at 2. Under the CSPA, an alien's age is calculated by "subtracting the time an applicable [visa] petition is pending from the alien's age at the time the alien parent's visa number becomes available." *Tovar v. U.S. Att'y Gen.*, 646 F.3d 1300, 1304 (11th Cir. 2011); *see* 8 U.S.C. § 1153(h)(1).[2] In essence, CSPA operates to toll the alien's age while a visa petition is pending. Because Piras turned twenty-one before the second I-140 petition was "pending," Am. Compl. ¶¶ 25, 33–34, he cannot benefit from any "age tolling." Regardless of how long the petition was pending and how much time would be subtracted, Piras would still be over twenty-one. As a result of the denial, Piras lost his employment and travel authorization and began accruing unlawful presence. *See* (Doc. 24-5) at 3.

---

[2] To take advantage of the CSPA, an alien must seek to "acquire the status of an alien lawfully admitted for permanent residence within one year" of the availability of the visa. 8 U.S.C. § 1153(h)(1)(A).

Piras initiated this action on December 10, 2024, seeking review under the Administrative Procedure Act (APA) of USCIS's decisions to deny the initial I-140 petition and the I-485 petition. Compl. (Doc. 1). After the defendants moved to dismiss, Piras, on May 25, 2025, amended his complaint. (Docs. 23, 24). In the amended complaint, Piras challenges 8 C.F.R. § 106.4(b), the USCIS rule requiring separate payment for a request for premium processing, and USCIS's decision to deny the initial I-140 petition on that basis. Am. Compl. ¶¶ 56–63 (Counts I and II). He argues that 8 C.F.R. § 106.4(b) is "arbitrary and capricious" and that it was promulgated "without observance of procedure required by law." *See id.* ¶ 58; 5 U.S.C. § 706(2)(A), (D). Among other remedies, Piras seeks vacatur of the initial denial. *See* Am. Compl. at 14 (Prayer for Relief). Piras does not challenge in his amended complaint USCIS's denial of the I-485 petition.

On July 15, 2025, Piras moved for a preliminary injunction requiring USCIS to reopen his I-485 petition, postpone the date of USCIS's denial of that petition, and reinstate the validity of his Employment Authorization Document, his travel authorization, and his period of authorized stay in the country. MPI; *see* 5 U.S.C. § 705. The defendants oppose. Resp. (Doc. 32).

5

## II. LEGAL STANDARD

To receive a preliminary injunction, a movant must establish (1) "a substantial likelihood of success on the merits"; (2) "irreparable injury" without an injunction; (3) "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam).[3]

## III. ANALYSIS

The defendants argue that Piras has not met his burden with respect to any of the four factors. Resp. at 11–20. The defendants also argue that Piras's motion should be denied because he seeks relief outside the amended complaint. *Id.* at 9–

---

[3] When a party seeks a preliminary injunction "to force another party to act," *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1295 (M.D. Fla. 2010), it becomes a "mandatory preliminary injunction," and "such relief should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party," *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) (per curiam) (quotation omitted); *see also Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981). The defendants argue that this heightened standard applies here. *See* Resp. at 10–11. Because Piras fails to meet his burden under the ordinary standard, I do not need to decide whether the heightened standard applies.

10. I agree with the defendant's last contention and also conclude that Piras has failed to establish a substantial likelihood of success on the merits.

### A. Piras Seeks Relief Outside the Amended Complaint

"To secure preliminary injunctive relief, a petitioner must demonstrate a substantial likelihood of prevailing on at least one of the causes of action he has asserted." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005). This means that "injunctive relief must relate in some fashion to the relief requested in the complaint," *id.*, and a "district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit," *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) (per curiam); *see, e.g.*, *Gomez v. United States*, 899 F.2d 1124, 1127 (11th Cir. 1990) ("Litigants are not entitled to greater temporary remedies pending litigation than they would be entitled to as the ultimate prevailing party."); *cf. De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally.").

Piras's requested injunctive relief does not relate to the relief requested in the amended complaint. Although his initial complaint challenged USCIS's denial of

his I-485 petition, Compl. ¶¶ 56–61, Piras's amended complaint challenges only USCIS's decision to reject the initial I-140 petition "because it did not include separate checks or money orders for premium processing fees," Am. Compl. ¶¶ 60–63. Piras, in the amended complaint, does not seek any relief regarding USCIS's decision to deny his I-485 petition, *see* Am. Compl. at 14 (Prayer for Relief), likely because Congress has foreclosed judicial review of that decision, *see infra* at 9–10. Accordingly, even if Piras were to prevail in this litigation, he would not be entitled to any judicial relief regarding USCIS's denial of his I-485 petition. It follows that Piras is not "entitled" to a remedy that would temporarily undo USCIS's denial and the side effects of that decision. *Gomez*, 899 F.2d at 1127; *see Bruce v. Reese*, 431 F. App'x 805, 806 n.1 (11th Cir. 2011) (per curiam) (affirming the denial of a preliminary injunction regarding causes of action that were omitted from an amended complaint).

### B. Piras Fails to Establish a Substantial Likelihood of Success on the Merits

Even assuming Piras could seek temporary relief regarding the denial of his I-485 petition, he fails to convince that he has a substantial likelihood of success on the merits. A few examples prove the point.

First, Piras does not address 8 U.S.C. § 1252(a)(2)(B), which strips jurisdiction from federal courts to review "any judgment regarding the granting of relief" under 8 U.S.C. § 1255, which governs adjustment of status. *See Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (en banc), *aff'd sub nom. Patel v. Garland*, 596 U.S. 328 (2022); *Aguilera v. Dist. Dir.*, 423 F. App'x 916, 918 (11th Cir. 2011) (per curiam) ("[T]he INA precludes judicial review of the discretionary denial of an application for adjustment of status."); *Commandant v. Dist. Dir., Miami Dist. (S24), USCIS*, No. 21-10372, 2024 WL 3565390, at *3 (11th Cir. July 29, 2024). This provision appears to foreclose, at the least, Piras's challenge to USCIS's denial of his I-485 petition. The sole statutory exception to this jurisdictional bar—which allows for "review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals," 8 U.S.C. § 1252(a)(2)(D)—does not apply.

Second, Piras does not demonstrate that he has standing to challenge 8 C.F.R. § 106.4(b) and the rejection of the initial I-140 petition. To have standing, a plaintiff "must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022). Traceability, the second element, is

9

lacking when, regardless of the challenged conduct, the same injury would have resulted. *See Walters v. Fast AC, LLC*, 60 F.4th 642, 650–51 (11th Cir. 2023). Traceability appears to be lacking here.[4]

Piras seeks judicial redress because USCIS denied his I-485 petition. *See* Am. Compl. ¶¶ 42–43. This denial was predicated on USCIS's determination that Piras was no longer due the "benefits and protections of being considered a 'child' " under the CSPA. *See id.* ¶¶ 40–42. Piras argues that this injury is traceable to 8 C.F.R. § 106.4(b)'s requirement of separate payments, which was the reason that USCIS rejected the initial I-140 petition. *See* Am. Compl. ¶¶ 56–63; 8 C.F.R. § 106.4(b)("The fee to request premium processing service may not be waived and must be paid in addition to, and in a separate remittance from, other filing fees.").

Piras's filings do not demonstrate that § 106.4(b) and USCIS's rejection of the initial I-140 petition caused the eventual denial of Piras's I-485 petition. This is because, when USCIS received the initial I-140 petition, Piras was already over

---

[4] Beyond traceability, redressability appears tenuous, at least based on the claims in the amended complaint. Piras's stated injuries appear to emerge from USCIS's denial of his I-485 petition. *See* Am. Compl. ¶¶ 38–42. But, as discussed, granting Piras the relief he requests in his amended complaint will not result in the judicial undoing of that decision. This means that any judgment will not remedy Piras's injury. *Cf. United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring in the judgment) ("We measure redressability by asking whether a court's judgment will remedy the plaintiff's harms.").

10

twenty-one. *See* Am. Compl. ¶¶ 25–26 ("On Sunday, March 5, 2023, [Piras] turned twenty-one years old. On Monday, March 6, 2023, FedEx delivered the I-140 petition in question to the USCIS Texas Service center."). Piras claims that the initial petition was timely based on a provision in the USCIS policy manual that provides "when the last day to file a benefit request or respond to USCIS falls on [Sunday], the agency will consider the paper filing timely if received by the end of the next business day." Am. Compl. ¶ 27. This manual squares with a generally applicable regulatory definition. *See* 8 C.F.R. § 1.2 (defining "day").[5]

It appears, though, that Piras is relying on an update to USCIS's policy manual that took effect on March 29, 2023, or about three weeks after the initial I-140 petition was delivered. *See* (Doc. 1-9) at 120. USCIS is not applying this policy "retroactively." *See id.* This means that, under the then-applicable rule, Piras was over twenty-one when the initial I-140 petition was filed. As a result, regardless of 8 C.F.R. § 106.4(b)'s requirement of separate payments and the rejection of the

---

[5] The definition in 8 C.F.R. § 1.2 applies "when computing the period of time for taking any action provided in this chapter I including the taking of an appeal," and does not speak to this situation, which concerns a deadline on a date certain, *see* (Doc. 1-9) at 120 (listing as an example a deadline that is the "last day before a requestor's or beneficiary's birthday"); *cf. Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1016 (6th Cir. 2005) (concluding that Rule 6(a) "does not apply to situations where the court has established a specific calendar day as a deadline").

initial I-140, Piras "would have suffered 'precisely the same' harm"—the denial of his petition for adjustment of status because he was not considered a "child" under the CSPA. *Walters*, 60 F.4th at 651 (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019)). In other words, even if § 106.4(b) allowed for a single, combined payment and even if USCIS granted the first I-140 petition, Piras would be in the exact same situation. Traceability is therefore lacking. *Cf. Walters*, 60 F.4th at 650–51 ("[A] plaintiff lacks standing to sue over a defendant's action 'if an independent source would have caused him to suffer the same injury.' " (quoting *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012))).

Although my analysis is subject to change, these jurisdictional obstacles alone convince me that, at this juncture, Piras lacks a substantial likelihood of success on the merits.[6]

## IV.  CONCLUSION

Piras seeks a temporary remedy that he would not be entitled to if he prevails in this litigation and fails to demonstrate a substantial likelihood of success on the

---

[6] Of course, this litigation presents additional legal issues, including the lawfulness of 8 C.F.R. § 106.4(b). This order does not address them in the light of the above analysis.

merits. Accordingly, Piras's Motion for a Preliminary Injunction (Doc. 28) is **DENIED**.

**ORDERED** in Tampa, Florida, on August 4, 2025.

_Kathryn Kimball Mizelle_
Kathryn Kimball Mizelle
United States District Judge